# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 17, 2022

Lyle W. Cayce
Clerk

No. 18-10137

United States of America,

*Plaintiff—Appellee*,

*versus*

Adrian Castro,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-cv-1761

Before Ho, Oldham, and Wilson, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:

The original opinion in this case issued on July 14, 2021. The petition for rehearing is DENIED. We withdraw our previous opinion and substitute the following in its place.

A judge on our court granted Adrian Castro a certificate of appealability ("COA"). It's undisputed that the COA is invalid under 28 U.S.C. § 2253(c)(2)–(3) because it fails to specify a constitutional issue. The only question is what we should do about it. We vacate the COA and dismiss the appeal.

No. 18-10137

I.

Adrian Castro plotted and executed a spree of violent thefts against United States postal workers. The Government indicted Castro and charged him with, *inter alia*, violating 18 U.S.C. § 2114(a) by assaulting mail carriers and putting their lives in danger, and violating 18 U.S.C. § 924(c)(1)(A) and (c)(3)(B) by using a firearm in relation to a crime of violence. Castro pleaded guilty to the relevant charges, and the district court sentenced him to 552 months in prison. This sentence included four concurrent sentences for 168 months based on the fact that Castro "put[] his [victims'] li[ves] in jeopardy by the use of a dangerous weapon." 18 U.S.C. § 2114(a). Castro did not appeal. His conviction became final on July 15, 2004.

Twelve years later, Castro filed his first motion under 28 U.S.C. § 2255. That was long after the one-year limitations period provided in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2255(f)(1). But Castro argued he should get a new limitations period based on *Johnson v. United States*, 576 U.S. 591 (2015). *See* 28 U.S.C. § 2255(f)(3) (providing a new one-year limitations period where the Supreme Court recognizes a new right and makes it retroactively applicable to cases on collateral review). The magistrate judge determined that *Johnson*'s holding as to the residual clause of 18 U.S.C. § 924(e)(2)(B) was inapplicable to Castro's conviction under § 924(c)(3)(B). Thus, Castro did not get the benefit of § 2255(f)(3), and his motion was time-barred. Castro objected to the report and recommendation, albeit with a concession that his argument was foreclosed by binding Fifth Circuit precedent. The district court adopted the report and recommendation, denied Castro relief, and denied a COA.

Castro then asked our court for a COA. One judge of our court granted a COA on a single procedural ground: "whether the district court erred by denying Castro's § 2255 motion as untimely."

No. 18-10137

II.

Prisoners challenging their custody are not like ordinary litigants. For over a century, Congress has required prisoners—unlike anyone else appealing a judgment—to receive permission before appealing. We first explain that permission requirement. Then we vacate Castro's COA.

A.

In 1908, Congress took away the appeal-as-of-right from state prisoners. *See* An Act restricting in certain cases the right of appeal to the Supreme Court in habeas proceedings, 35 Stat. 40, 40 (1908). In its place, Congress instituted the certificate of probable cause ("CPC") procedure. The CPC procedure required a state prisoner to obtain certification from "the United States court by which the final decision was rendered or a justice of the Supreme Court" that "probable cause for an appeal" existed. *Ibid.* This prerequisite to appeal served to preempt frivolous petitions and prevent the expenditure of precious judicial resources on meritless cases. *See Davis v. Jacobs*, 454 U.S. 911, 917 (1981) (Rehnquist, J., dissenting) ("[C]ongress[] . . . impose[d] th[e] [CPC] requirement as a means of terminating frivolous appeals in habeas corpus proceedings.").

In 1948, Congress broadened the types of judicial officers empowered to grant CPCs to include circuit judges in addition to Supreme Court justices. *See* An Act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary," 62 Stat. 869, 967 (1948). And although the statute did not designate the substantive standard for probable cause, the Supreme Court held that a prisoner seeking certification must offer a "substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (quotation omitted).

A tidal shift occurred in 1996 when Congress enacted AEDPA, which overhauled the statutory framework governing habeas corpus with an eye

3

towards "eliminat[ing] delays in the federal habeas review process." *Holland v. Florida*, 560 U.S. 631, 648 (2010); *see* Pub. L. No. 104-132, 110 Stat. 1214 (1996). Section 2253(c)(2), as amended by AEDPA, retained the certification requirement but changed the name to a "certificate of appealability." And instead of permitting an appeal anytime a prisoner made "a substantial showing of the denial of a *federal* right," *Barefoot*, 463 U.S. at 893 (emphasis added), AEDPA elevated the standard and limited appeals to only those cases in which an applicant makes "a substantial showing of the denial of a *constitutional* right," 28 U.S.C. § 2253(c)(2) (emphasis added). As directly relevant here, AEDPA applied the certificate requirement for the first time to federal prisoners like Castro. *See United States v. Orozco*, 103 F.3d 389, 391 (5th Cir. 1996) (noting "a pre-AEDPA § 2255 movant was not required to obtain [a CPC] in order to appeal the final order in a § 2255 proceeding to a court of appeals").

Today, state and federal prisoners face the same hurdle to noticing an appeal: The applicant must obtain a COA by making "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement that a COA identify a constitutional issue serves the same interest as the earlier CPC requirement—namely to "screen[] out issues unworthy of judicial time and attention" and to "ensure[] that frivolous claims are not assigned to merits panels." *Gonzalez v. Thaler*, 565 U.S. 134, 145 (2012). In short, the COA requirement serves a gatekeeping function. *See Jennings v. Stephens*, 574 U.S. 271, 291–92 (2015) (Thomas, J., dissenting) (describing the history and purpose of the COA requirement).

The must-identify-a-constitutional-issue requirement is not diminished where a district court denies relief on procedural grounds. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA in such a circumstance, an applicant must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

No. 18-10137

constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 478. The rationale for these rules is simple: If a prisoner must eventually prove a constitutional violation to secure release from custody, his appeal should proceed only if he can prove a debatable constitutional issue at the outset. A procedural-only appeal is much ado about nothing. *See, e.g.*, *id.* at 483–84 (holding that a COA applicant "must make a substantial showing of the denial of a constitutional right"); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'").

Most recently, the Supreme Court confronted a COA issued by our court that is materially identical to the COA our court issued in this case. *See Gonzalez*, 565 U.S. at 138. Here are the two Fifth Circuit COAs side-by-side:

| *Gonzalez v. Thaler* | *United States v. Castro* |
|---|---|
| "whether the habeas application was timely filed" | "whether the district court erred by denying Castro's § 2255 motion as untimely" |

The Supreme Court unanimously agreed that such a COA is invalid because it says nothing at all about the Constitution. *See Gonzalez*, 565 U.S. at 141 (eight justices agreeing that a procedural-only COA is invalid); *id.* at 155 (Scalia, J., dissenting) (arguing that a procedural-only COA is invalid and also constitutes a jurisdictional defect). And although an invalid COA does not deprive us of jurisdiction, the Court nevertheless held that the commands in § 2253(c)(2) and (c)(3) are "mandatory." *Id.* at 154 (majority op.).

B.

Given *Gonzalez* and the Court's unanimous judgment, both sides unsurprisingly agree that Castro's COA is invalid. The Government asks us

to vacate it. The Federal Public Defender ("FPD") says that once a COA is issued, it cannot be vacated—no matter how badly it conflicts with the COA requirements enacted by Congress and affirmed by the unanimous judgment of the Supreme Court.

We agree with the Government. The Supreme Court has repeatedly admonished us that procedural-only COAs are invalid. We've refused to follow those instructions before, and we've been reversed for the refusal. Today we resolve to follow the statute that Congress wrote and to forswear procedural-only COAs. "Having sworn off the habit of venturing beyond Congress's intent, we will not accept [the] invitation to have one last drink." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).

This approach accords with other habeas doctrines. Take for example *Teague v. Lane*, 489 U.S. 288 (1989). Like the COA requirement, the nonretroactivity doctrine serves the interests of judicial economy, efficiency, and administration. *See, e.g.*, *Mackey v. United States*, 401 U.S. 667, 676 (1971) (Harlan, J., concurring in the judgment) (noting the nonretroactivity "doctrine was the product of the Court's disquietude with the impacts of its fast-moving pace of constitutional innovation in the criminal field" and "a technique that provided an impetus for the implementation of long overdue reforms, which otherwise could not be practicably effected" (quotation omitted)). Like an invalid COA, the nonretroactivity of a Supreme Court decision under *Teague* is a non-jurisdictional defense. And where the State fails to raise *Teague*, the federal court can raise it sua sponte and dismiss the habeas petition. *See Caspari v. Bohlen*, 510 U.S. 383, 389 (1994).

Or take AEDPA's one-year time bar. *See* 28 U.S.C. § 2244(d). Like the COA requirement, the limitations period serves the interests of judicial economy, efficiency, and administration. *See Day v. McDonough*, 547 U.S. 198, 205 (2006) (noting § 2244(d) "implicate[s] values beyond the concerns

of the parties" including "judicial efficiency and conservation of judicial resources" (quotations omitted)). Like an invalid COA, the limitations period is a non-jurisdictional defense. And where the State fails to raise it, the federal court can raise it sua sponte and dismiss the habeas petition. *Id.* at 209.

Third, take procedural default. Like the COA requirement, the procedural-default doctrine serves the interests of judicial economy, efficiency, and administration. *See Magourik v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). Like an invalid COA, procedural default is a non-jurisdictional defense. And where the State fails to raise a default, the federal court can raise it sua sponte and dismiss the habeas petition. *Ibid.*; *see also Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997); *Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998); *Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *Yeatts v. Angelone*, 166 F.3d 255, 261 (4th Cir. 1999); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004); *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998); *King v. Kemna*, 266 F.3d 816, 822 (8th Cir. 2001) (en banc); *Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003); *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002); *Moon v. Head*, 285 F.3d 1301, 1315 n.17 (11th Cir. 2002).

Fourth and finally, consider exhaustion of state remedies. In *Granberry v. Greer*, 481 U.S. 129 (1987), the Court held federal courts have discretion to raise a prisoner's failure to exhaust sua sponte. *Id.* at 133. It even opined that a contrary holding would be an "extreme position[]." *Ibid.*; *see also Day v. McDonough*, 547 U.S. 198, 206 (2006) (citing *Granberry*'s holding favorably post-AEDPA).

Given the plain text of § 2253(c)(2), Supreme Court precedent, and the similarities between the COA requirement and other habeas doctrines, we hold that our court has the discretion to raise a COA's invalidity sua

sponte and vacate the COA. In so holding, we align our circuit with the strong majority of circuits that have confronted this issue. *See Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("A failure to specify [an underlying constitutional issue] would violate the text enacted by Congress, *see* 28 U.S.C. § 2253(c)(3), and will result in the vacatur of the certificate."); *Phelps v. Alameda*, 366 F.3d 722, 728–31 (9th Cir. 2004) (vacating a COA as improvidently granted for failure to specify a debatable constitutional issue); *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) ("[R]evoking[] a certificate [of appealability], especially one we have issued, is . . . well within our authority."); *see also United States v. Marcello*, 212 F.3d 1005, 1007–08 (7th Cir. 2000) ("[W]e have discretion to decide the case by reviewing the validity of the [certificate of appealability] or by going straight to the issues raised on appeal."). *But see Rayner v. Mills*, 685 F.3d 631, 635 n.1 (6th Cir. 2012) ("[A]s the issues have already been briefed and presented to this [c]ourt, we will not review the grant of the COA.").

## C.

The FPD nonetheless says *Gonzalez* is somehow inconsistent with vacating Castro's COA. That misreads the Supreme Court's decision.

*Gonzalez* reiterated the principle—well-settled since the landmark decisions in *Slack* and *Miller-El*—that a COA comports with the mandatory language used by Congress *only if* it "indicates which specific issue or issues" constitute "a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2)–(3) (emphasis added); *see Gonzalez*, 565 U.S. at 140–41 (quoting *Slack*, 529 U.S. at 484). *Gonzalez* simply held that a single judge's mistake in granting a COA that fails to indicate a constitutional issue does not strip us of jurisdiction in the same way a late notice of appeal would. *See id.* at 144, 147 (distinguishing the COA from a notice of appeal and *Bowles v.*

*Russell*, 551 U.S. 205 (2007)). Nothing in *Gonzalez*'s holding requires us to blind ourselves to a COA error that is so patent that the FPD concedes it.

Nor does *Gonzalez*'s reasoning require that result. In *Gonzalez*, no one identified the invalidity of the COA until after briefing in our court, after argument in our court, after a precedential decision from our court, and after a cert petition in the Supreme Court. It was not until the State's *brief in opposition* that anyone noticed the COA problem. *See* 565 U.S. at 145. On those facts, vacating the COA at such a late date would serve no "gatekeeping" function whatsoever. *Ibid.* To the contrary, it would create serious inefficiencies—the same ones the COA is designed to prevent—to vacate a COA after our court has already rendered its decision. *Ibid.*

Those concerns do not apply here. The parties conceded the invalidity of our COA before oral argument, which we then canceled. So here—unlike in *Gonzalez*—we're confronted with the choice of either (A) honoring the COA requirement that Congress wrote or (B) ignoring it and plowing ahead in the face of a conceded error and rendering a decision limited to a non-constitutional issue. We choose (A)—a choice our court did not have in *Gonzalez*.

That does not mean—as the FPD seems to misunderstand—that our court must always raise COA defects sua sponte, as we must with jurisdictional defects. To hold otherwise, we would have to equate the two types of defects in a way that *Gonzalez* forbids. Rather, we hold only that our court *can* raise COA defects sua sponte—just as it *can* raise numerous other defects in postconviction proceedings. *See supra* pp. 6–7 (discussing retroactivity, the statute of limitations, procedural default, and exhaustion). We reject the FPD's "extreme position[]" that COA defects alone are somehow beyond our cognizance to recognize sua sponte. *Granberry*, 481 U.S. at 133.

No. 18-10137

### III.

In some cases, our court and not the movant is to blame for a COA defect. *See Gonzalez*, 565 U.S. at 144 ("A petitioner, having successfully obtained a COA, has no control over how the judge drafts the COA and . . . may have done everything required of him by law."). How, then, do we prevent our mistakes from hurting otherwise-faultless movants?

The answer is simple. When we spot a defective COA, on our own initiative or otherwise, it should be vacated. Then we can, in our discretion, consider issuing a valid COA. *See United States v. Smith*, 945 F.3d 860, 863 (5th Cir. 2019) ("We can correct this nonjurisdictional defect 'by considering an amendment to the COA.'" (quoting *Gonzalez*, 565 U.S. at 146)). Of course, we are bound by the well-settled rule that a prisoner cannot ask for a COA here on any ground different from the one(s) submitted to and rejected by the district court. *See Black v. Davis*, 902 F.3d 541, 545 (5th Cir. 2018). But assuming the prisoner did his part correctly and asked for a valid COA in the district court and then again in ours, the rule we announce today will not hurt him. He'll either get the COA in the first instance or, if we make a mistake and issue an invalid certificate, we can recognize our mistake and fix it with a valid one.

Castro asks us to issue a valid COA on "whether the residual clause found in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague" after the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *Black* poses no obstacle to Castro because his initial § 2255 motion explicitly argued that § 924(c) is unconstitutionally vague. *See Castro v. United States*, No. 3:16-cv-1761, ECF No. 1, at 7 (N.D. Tex. June 24, 2016). The district court's denial of that motion amounted to an implicit refusal to issue a COA on void-for-vagueness grounds. *See* Habeas Rule Governing Section 2255 Proceedings 11(a) ("The district court must issue or deny a certificate of

10

No. 18-10137

appealability when it enters a final order adverse to the applicant."); *see also Black*, 902 F.3d at 545 (explaining this rule's importance). Castro now asks our court for a COA based on *Davis*—a void-for-vagueness case that held 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague. *See* 139 S. Ct. at 2336. Thus, Castro's request for an amended COA is based on the same ground (void-for-vagueness) as his original COA request in district court.

Even so, we cannot grant Castro's request. Castro was not sentenced under the residual clause in § 924(c)(3)(B). He was sentenced under the *elements* clause in § 924(c)(3)(A). The elements clause defines as a "crime of violence" any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Here, Castro pleaded guilty to an offense that has as an element "put[ting] his [victims'] li[ves] in jeopardy by the use of a dangerous weapon." 18 U.S.C. § 2114(a). Castro's indictment, his stipulated factual resume, and his plea agreement all confirm that he was convicted of and sentenced for putting the lives of his victims in jeopardy by using a handgun. There's no other way he could've been sentenced to 168 months for his § 2114(a) counts. That easily satisfies the elements clause and renders § 924(c)'s residual clause and *Davis* irrelevant. *See In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016) (finding a violation of 18 U.S.C. § 2114(a) in which the victim's life was put in jeopardy to constitute a crime of violence); *United States v. Enoch*, 865 F.3d 575, 582 (7th Cir. 2017) (same); *Knight v. United States*, 936 F.3d 495, 501 (6th Cir. 2019) (same); *Williams v. United States*, 794 F. App'x 612, 614 (9th Cir. 2019) (mem.) (same).

\*     \*     \*

The COA we originally granted was invalid, so we now vacate it. And because Castro has not made "a substantial showing of the denial of a constitutional right," *see Slack*, 529 U.S. at 483–84, we cannot grant an

No. 18-10137

amended COA, *see Smith*, 945 F.3d at 863. We therefore dismiss for lack of jurisdiction. *See Gonzalez*, 565 U.S. at 142 (lack of a COA destroys jurisdiction).

PETITION FOR REHEARING DENIED; COA VACATED; APPEAL DISMISSED.