# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2025

Lyle W. Cayce
Clerk

No. 24-30338

United States of America,

*Plaintiff—Appellee*,

*versus*

Mark Richburg,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-1832

Before Jones and Graves, *Circuit Judges*, and Rodriguez, *District Judge*.[*]

Per Curiam:[**]

Mark Richburg appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his conviction. Because he cannot show prejudice

---

[*] United States District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

even if his counsel was ineffective, the judgment of the district court is AFFIRMED.

## BACKGROUND

Petitioner Mark Richburg pled guilty to conspiring to distribute cocaine and heroin and was sentenced to 292 months in prison. In exchange for his plea, the government dismissed a count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[1]

After a short-lived appeal, which this court dismissed, Richburg moved in the district court to "vacate, correct, or set aside" his sentence under 28 U.S.C. § 2255. In relevant part, Richburg argued that he received ineffective assistance when his prior counsel miscalculated the guidelines range and informed him that he faced a plea-deal sentence of no more than sixteen years (192 months), when the sentencing guidelines range was 292–365 months. The district court held an evidentiary hearing. There, Richburg's post-conviction counsel asked what would have happened if prior counsel properly calculated the guidelines range. Richburg testified: "Without second-guessing, it was an automatic trial for me." His prior counsel testified: "I think in hindsight he might have wanted to go to trial if he would have known what sentence he would have gotten. . . . But . . . I still wouldn't have recommended it."

---

[1] This was only Richburg's latest offense; the presentence investigation report cites twenty previous convictions and charges that run the gamut from theft and burglary, to possession of illicit substances, to conspiracy to make false statements to a firearms dealer, to domestic violence. Richburg has averaged almost a charge per year since his first offense at the age of fifteen, despite his spending a significant part of that time in jail or on probation.

Ultimately, the district court assumed counsel's performance was deficient but denied Richburg's ineffective-assistance-of-counsel claim for lack of prejudice, relying at least in part on *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (defendant "must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a 'significantly less harsh' sentence"). The district court granted a certificate of appealability ("COA").

## STANDARD OF REVIEW

"In the appeal of a denial of a § 2255 motion, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020) (citation omitted). "A district court's conclusions concerning a § 2255 petitioner's claims of ineffective assistance of counsel involve mixed questions of fact and law, which we review de novo." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

We begin by considering the government's contention that Richburg's COA is defective. Then, we address whether Richburg has shown that his ineffective-assistance-of-counsel ("IAC") claim merits relief under 28 U.S.C. § 2255.

## I.

The denial of a § 2255 motion is reviewable only if the petitioner obtains a COA. 28 U.S.C. § 2254(c)(1). A judge may issue a COA only if the applicant makes a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to

deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003). Further, the COA must identify "which specific issue or issues satisfy the showing." 28 U.S.C. § 2253(c)(3). This requirement serves "to screen out issues unworthy of judicial time and attention and to ensure that frivolous claims are not assigned to merits panels." *United States v. Castro*, 30 F.4th 240, 244 (5th Cir. 2022) (internal quotation marks, brackets, and citation omitted), *cert. denied*, 143 S. Ct. 187 (2022).

In issuing a COA here, the district court stated: "Though the Court denied Mr. Richburg's motion for relief, it also finds that at the very least, the issue presented by Mr. Richburg deserves encouragement to proceed further. The Court further finds that reasonable jurists could debate whether his petition could have been resolved differently. Accordingly, the Court will issue a certificate of appealability." The government contends that the COA is defective because "[i]t failed to identify any issue or *Strickland* factor that satisfied § 2253(c)'s requirements." The government's argument primarily relies on our decision in *Pierre v. Hooper*, 51 F.4th 135 (5th Cir. 2022) (per curiam).

In *Pierre*, a Louisiana prisoner filed a petition in the district court under 28 U.S.C. § 2254 challenging his state convictions "on various constitutional grounds." *Id.* at 136. The district court dismissed the petition as time-barred and denied the petitioner a certificate of appealability. *Id.* Then, the petitioner "asked our court to grant him a COA on both the district court's procedural ruling as well as the substantive claims in his § 2254 petition." *Id.* at 137. "A judge of our court granted a COA, but only 'in part as to the district court's procedural dismissal of the petition as time barred.'" *Id.* "A COA was not granted on any substantive constitutional claim." *Id.* The COA stated only that the "petition reflects facially valid constitutional claims," and that "the available pleadings and record do not

clearly show that a COA is not warranted." *Id.* A panel of this court held that the COA was defective because it failed to "'indicate' the issue on which [the applicant] had made a substantial showing of the denial of a constitutional right, as required by § 2253(c)." *Id.* (citation omitted). Moreover, "even assuming *arguendo*" that the COA indicated a *specific* constitutional issue, "it did not find that 'jurists of reason' would find 'debatable' any of the constitutional issues." *Id.*

The COA issued here does not present the same problem as the one issued in *Pierre*. Richburg "applie[d] for a [COA] on the following specific issue: Did his counsel's failure to reasonably calculate his sentencing guidelines range deprive him of his constitutional right to effective counsel when deciding whether to plead guilty?" He raised just a single constitutional issue—not multiple. The district court held that "*the issue* presented by [Richburg] deserves encouragement to proceed further," and "that reasonable jurists could debate whether his petition could have been resolved differently." Both these holdings were clearly made in connection with the single, "specific," constitutional issue that Richburg raised in his application for a COA. We fail to see any room for confusion on these facts. The COA is not defective.

## II.

To prevail on his IAC claim, Richburg must show that he suffered (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). In the proceedings below, the district court "assum[ed] arguendo that [counsel] made professional errors in his counsel of [Richburg]," and that counsel "did not adequately explain that [Richburg] could be facing a term greater than sixteen years." "The *Strickland prejudice* prong guide[d] the [district court's] analysis," (emphasis in original), and the district court decided that "it need not discuss

5

[counsel's] actions under the deficiency prong." We also confine our analysis to *Strickland*'s prejudice prong.

Where a petitioner alleges ineffective assistance in connection with a guilty plea, prejudice requires the petitioner to demonstrate a reasonable probability that, but for counsel's deficiency, he would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985) ("'[P]rejudice . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*.'" (emphasis added)). The government concedes in its brief that "the district court undertook a wrong analysis, requiring [Richburg] to show *Strickland* prejudice in the context of sentencing," as in *Grammas*, "rather than in the context of pleading guilty, which [Richburg] alleged." *See Lee v. United States*, 582 U.S. 357, 364, 137 S. Ct. 1958, 1965 (2017) ("[W]e do not ask whether, had he gone to trial, the result of that trial 'would have been different.'"). But as the government argues, it makes no difference because Richburg cannot satisfy the correct prejudice standard.

The Supreme Court has cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee*, 582 U.S. at 369, 137 S. Ct. at 1967. Courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* That sort of evidence was "undisputed" in the "unusual circumstances" of *Lee*, which is illustrative. *Id.*

There, an "attorney advised Lee that going to trial was 'very risky' and that, if he pleaded guilty, he would receive a lighter sentence than he would if convicted at trial." *Id.* at 361, 369, 137 S. Ct. at 1963, 1967–68. All parties agreed: "Lee informed his attorney of his noncitizen status and repeatedly asked him whether he would face deportation as a result of the

6

criminal proceedings. The attorney told Lee that he would not be deported as a result of pleading guilty." *Id.* at 361, 137 S. Ct. at 1963. Lee reiterated his concerns to the court and received assurances from his lawyer. "Lee quickly learned, however, that a prison term was not the only consequence of his plea. Lee had ple[d] guilty to what qualifies as an 'aggravated felony' under the Immigration and Nationality Act, and a noncitizen convicted of such an offense is subject to mandatory deportation." *Id.* at 361, 137 S. Ct. at 1963. In short: The evidence in *Lee* was exceptional, which is a marked contrast to the evidence here.

There is no "substantial," "uncontroverted," "contemporaneous," evidence of the "paramount importance" that Richburg placed on the estimated guidelines range his counsel provided. *Id.* at 370–71, 137 S. Ct. at 1968–69. The only real evidence here consists of *post hoc* assertions by Richburg and his prior counsel. And even those *post hoc* assertions fall far short of establishing the "paramount importance" of the guidelines estimate. When asked whether he would have pled guilty if given a proper estimate, Richburg explained, "I wouldn't have signed the paper for ten years knowing at the end I'm still going to get twenty-four years." Of course, there was no way for Richburg (or his counsel) to "know" that he would definitely "get twenty-four years." Not even an accurate guidelines estimate would dictate that outcome since the guidelines are not binding on the district court. *See Valdez*, 973 F.3d at 404 ("[T]he application of the Guidelines to a sentence is discretionary."). Richburg knew that twenty-four years was a possibility but that did not compel him to change his mind. Richburg's prior counsel testified he "*think[s]* in hindsight [Richburg] *might* have wanted to go to trial . . . ." Though relevant, this statement is much less decisive than counsel's testimony in *Lee* that deportation was "*the* determinative issue in Lee's decision whether to accept the plea." 582 U.S. at 362, 137 S. Ct. at 1963 (emphasis added).

7

Aside from contemporaneous evidence, this court has listed several "[f]actors relevant to determining whether a defendant would have gone to trial." *Valdez*, 973 F.3d at 403. Those factors include: "the risks he would have faced at trial," "his representations about his desire to retract his plea," and "the district court's admonishments." *Id.* (internal quotation marks, brackets, and citations omitted). Here, each of the factors weighs against a finding of prejudice.

**1.**

The prejudice inquiry "may not turn *solely* on the likelihood of conviction at trial," *Lee*, 582 U.S. at 367, 137 S. Ct. at 1966 (emphasis added), but "a defendant's prospects at trial are *relevant* to whether he or she would have gone to trial instead of pleading guilty." *Valdez*, 973 F.3d at 403 (emphasis added) (citation omitted). "A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 582 U.S. at 367, 137 S. Ct. at 1966. Rightly so, for "[w]here a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Id.*

Richburg's prospects at trial were bleak—at best. Much of the evidence was included in the factual basis, which he signed and swore was "accurate," "true," and "correct." Prosecutors were prepared to show, with ample record evidence, that "Richburg was a heroin, cocaine, and cocaine base trafficker" who "supplied heroin to numerous other individuals" and "employed several individuals . . . to distribute narcotics to customers in the New Orleans metropolitan area."

Law enforcement captured numerous drug-related phone calls and text messages between Richburg and his conspirators through wiretaps. The

text messages corroborate that Richburg would wire money to individuals who ran drugs between Houston and New Orleans. One such individual, Wyvonne Tyson, was arrested while on her way to New Orleans with large quantities of drugs. The Drug Enforcement Administration identified seventeen drug-related trips that Tyson took from Houston to New Orleans over the course of five months. The illicit nature of these trips was corroborated by a cooperating defendant, who explained that Richburg employed Tyson and another individual to transport substantial quantities of heroin and cocaine between New Orleans and Houston. A second cooperating defendant also corroborated the investigation's findings.

In a wiretapped phone call with Richburg, Tyson referred to the two of them as "partners in crime." Other intercepted phone calls were littered with well-known drug lingo. Authorities obtained search warrants for Richburg's residence and other properties utilized by him. In his residence, where Richburg was present when the warrant was executed, authorities found extremely damning evidence: heroin, cocaine, adulterants and dilutants used as additives for cocaine and heroin, other drug paraphernalia like plastic bags, scales, and Pyrex cookware, and a plane ticket between Houston and New Orleans for one of the other drug runners who a cooperating defendant confirmed was employed by Richburg. In addition to this, at other properties utilized by Richburg and his associates, law enforcement found multiple firearms, heroin, cocaine base, a kilo press, as well as other drug paraphernalia.

The availability of this significant evidence, combined with the testimony of agents familiar with Richburg and his organization, and the testimony of several cooperating co-conspirators, would have made Richburg's success at trial exceedingly unlikely. Moreover, rejecting a plea agreement would have exposed Richburg to a charge for possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.

§§ 924(c)(1)(A)(i), (2).  Thus even if Richburg's prior counsel provided a proper estimate of the guidelines range, he "still wouldn't have recommended" that Richburg go to trial, "because his exposure would have been even greater."  Specifically, if Richburg were convicted on both counts, he would have faced a higher mandatory minimum of fifteen years' imprisonment due to the § 924 charge.  *See* 18 U.S.C. § 924(c)(1)(A)(i) (minimum consecutive sentence of five years); 21 U.S.C. § 841(b)(1)(A) (minimum sentence of ten years).  Additionally, he would have faced a higher guideline range and offense level, which would not have been reduced for his acceptance of responsibility.[2]  *See Lee*, 582 U.S. at 367, 137 S. Ct. at 1966 ("[A] defendant [without any viable defense] will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial . . . because defendants obviously weigh their prospects at trial in deciding whether to accept a plea." (citation omitted)).  Considering the bleakness of Richburg's prospects, this first factor weighs against a finding of prejudice.

**2.**

We address the second and third factors together.  At rearraignment, the district court admonished Richburg that it could depart from the sentencing guidelines and impose the maximum sentence.  In its own words: "All you can be certain of is that your sentence will not exceed the maximum statutory penalty which I have just previously discussed with you."  Richburg stated under oath that he knew he would receive a sentence of at least ten

---

[2] Without the three-point reduction granted by his plea deal, Richburg's total offense level would be 42.  Accounting for his criminal history category, Richburg's guidelines range would be 360 months to life.  *See* U.S.S.G. § Ch. 5, Pt. A (sentencing table).  In comparison, the guidelines range under Richburg's plea deal was 292 to 365 months.

years and up to life imprisonment. Richburg had no qualm at the time. He even confirmed that no one, including his attorney, "made any promise as to what [his] specific sentence would be," but only "g[a]ve [him] an estimate suggested by the guidelines." These "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977). Indeed, this court has held that there was no prejudice in analogous cases. *See, e.g.*, *Valdez*, 973 F.3d at 405–06 (no prejudice even if counsel miscalculated the guidelines range where the defendant "stated, under oath, that he understood that the maximum penalty was 120 months, his attorney's estimate of his sentence could be wrong, was not a 'promise' or 'guarantee,' [and] was 'not binding on this Court'"); *see also United States v. Lincks*, 82 F.4th 325, 332 n.10 (5th Cir. 2023) (same where defendant "was incontrovertibly aware of the maximum statutory sentence and repeatedly and expressly disclaimed reliance on any predictions or representations of counsel").

Despite confirming he understood that the district court would have discretion to impose a life sentence, or a different sentence exceeding the guidelines range, Richburg did not express any desire to withdraw his guilty plea. To the contrary, the record shows that Richburg willingly and deliberately pled guilty. Referring to where he was incarcerated, Richburg testified, "I'm tired of sitting in St. Tammany [Parish Jail]. I would have signed anything to get out of there." He made almost identical statements several other times during the evidentiary hearing. And the record corroborates that Richburg voiced concerns when he had them. For instance, at the sentencing hearing, Richburg offered the following: "The question was asked was anything promised to me, yes, from this gentleman, if I didn't cooperate, 30 years is what I was getting, that was my promise. And it seems like because I didn't cooperate, it seems like he's sticking good to his promise. I don't know if that's set, but you said I had a right to speak my truth

and I am speaking it." This refutes Richburg's testimony at the evidentiary hearing that he did not air his concerns sooner because he did not want to "blurt it out" and disrespect the district court. Richburg expressed complaints when he wanted.

### 3.

Considering the "totality of the evidence," *Lee*, 582 U.S. at 367, 137 S. Ct. at 1966 (citation omitted), there is no reasonable probability that Richburg would not have pled guilty but for his counsel's miscalculation. Richburg was advised of a possible life sentence despite any guideline estimate; he confirmed that he was given no promise of a certain sentence; he decided to plead guilty; and there is no contemporaneous evidence that Richburg placed a paramount importance on his counsel's estimate of the guidelines range. The district court found, and the record reflects, that Richburg "underst[ood] the consequences of a guilty plea." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990). Thus Richburg cannot prove prejudice.

\*     \*     \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.