# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022

Lyle W. Cayce
Clerk

No. 20-10705

United States of America,

*Plaintiff—Appellee*,

*versus*

Jose Vargas-Soto,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-cv-680

Before Davis, Elrod, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

The question presented is whether Jose Vargas-Soto's successive motion for postconviction relief under 28 U.S.C. § 2255 is procedurally barred. We say yes.

I.

We begin with (A) a description of the relevant legal background. Then we explain (B) Vargas-Soto's procedural history.

No. 20-10705

## A.

First some legal background. The Supreme Court long struggled with interpreting various "residual clauses" in federal criminal statutes, such as the definition of "violent felony" in the Armed Career Criminal Act ("ACCA") and the definition of "crime of violence" in the Immigration and Nationality Act ("INA"). *See* 18 U.S.C. § 924(e)(2)(B) (ACCA); 8 U.S.C. § 16(b) (INA). Initially, the Court applied a "categorical approach" to determine whether a particular offense fell within a residual clause. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575, 601 (1990) (holding that "the legislative history of [ACCA] shows that Congress generally took a categorical approach to predicate offenses"); *Leocal v. Ashcroft*, 543 U.S. 1 (2004) (applying the categorical approach to the INA's definition of "aggravated felony," which includes the residual clause's definition of "crime of violence," but not addressing the constitutionality of the residual clause). That approach, however, led to a litany of head-scratchingly inconsistent results. *See Chambers v. United States*, 555 U.S. 122, 133 (2009) (Alito, J., concurring in judgment) ("After almost two decades with *Taylor*'s 'categorical approach,' only one thing is clear: ACCA's residual clause is nearly impossible to apply consistently.").

That led some on the Court to question whether ACCA's residual clause was unconstitutionally vague. *See, e.g.*, *James v. United States*, 550 U.S. 192, 214–31 (2007) (Scalia, J., dissenting); *Sykes v. United States*, 564 U.S. 1, 28 (2011) (Scalia, J., dissenting) (reiterating the view that "ACCA's residual provision is a drafting failure and [should be] declare[d] . . . void for vagueness"). For many years, however, the Court continued to apply the residual clauses anyway.

After about a decade of struggling, the skeptics won. In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held ACCA's residual

clause violated the defendant's due-process rights because it was "void for vagueness" and overruled *James* and *Sykes*. *Id.* at 595–606. As with so many landmark decisions, however, *Johnson* raised more questions than it answered. Chief among them: whether the void-for-vagueness holding should have retroactive effect, and whether other residual clauses (such as the INA's) are also unconstitutionally vague.

The Supreme Court started with retroactivity. The Court held that in *Johnson*, it "announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 578 U.S. 120, 127, 135 (2016); *cf. Schriro v. Summerlin*, 542 U.S. 348, 353–55 (2004) (explaining the difference between substantive and procedural rules).

Then the Court turned to whether *Johnson* extended to other residual clauses. In *Beckles v. United States*, 137 S. Ct. 886 (2017), the Court concluded that the "advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." *Id.* at 890. In *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Court held that the INA's residual clause was "similarly worded" to the one in *Johnson* and in turn "suffer[ed] from the same constitutional defect." *Id.* at 1210. Finally, in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Court held that 18 U.S.C. § 924(c)'s residual clause was unconstitutionally vague. *Id.* at 2336. The Supreme Court never took a case to expressly decide whether *Dimaya* or *Davis* were retroactive to cases on collateral review.

## B.

Now, Vargas-Soto's procedural history. Vargas-Soto has a long rap sheet, starting long before *James*, *Sykes*, and *Johnson*. In 2001, he pleaded guilty to driving while intoxicated ("DWI"). In 2003, he pleaded guilty to manslaughter, intoxicated assault, and evading arrest, among other offenses. In 2007, he pleaded guilty to unlawful possession of a controlled substance

No. 20-10705

(cocaine). In 2008, he pleaded guilty to illegal reentry after removal. In late 2009, the United States Government removed Vargas-Soto. But he immediately returned and committed another crime: In 2010, Vargas-Soto pleaded guilty to another DWI.

This finally brings us to his current term of imprisonment. In 2011, the Government charged Vargas-Soto with illegal reentry after removal in violation of 8 U.S.C. § 1326(a).[1] He pleaded guilty. The Government contended that Vargas-Soto faced a maximum of 20 years because he qualified for the sentencing enhancement in § 1326(b)(2) by previously committing an "aggravated felony" under the residual clause's definition of a "crime of violence."

On October 15, 2011, the district court agreed and sentenced Vargas-Soto to 180 months. Vargas-Soto timely appealed. He challenged the district court's conclusion that his prior conviction for manslaughter qualified as a "crime of violence" (and thus an "aggravated felony"); he did not challenge the residual clause for vagueness. Applying plain-error review, we affirmed the district court's judgment. *United States v. Vargas-Soto*, 700 F.3d 180 (5th Cir. 2012).

---

[1] Under the pre-1996 INA, proceedings brought against aliens attempting to enter the country were called "exclusion proceedings," and proceedings brought against aliens already present in the United States were called "deportation proceedings." In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended in scattered sections of Title 8 of the U.S. Code). After IIRIRA, both kinds of proceedings are simply called "removal proceedings." *See* IIRIRA § 309(d)(2) ("[A]ny reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."); *see also Ali v. Barr*, 951 F.3d 275, 277 n.1 (5th Cir. 2020) (discussing the change in nomenclature).

No. 20-10705

Vargas-Soto then petitioned the Supreme Court for a writ of certiorari. On February 25, 2013, the Court denied it. That made Vargas-Soto's conviction final.

Between 2013 and 2018, Vargas-Soto filed (or sought authorization to file) numerous motions for collateral review, including at least one § 2255 motion. None succeeded. And only one prior filing is relevant here. On June 27, 2016, Vargas-Soto sought authorization to file a successive § 2255 motion based on the Supreme Court's decisions in *Johnson* (2015) and *Welch* (2016). We denied that request because then-binding Fifth Circuit precedent foreclosed Vargas-Soto's vagueness challenge to the INA's residual clause.

In 2018, the Supreme Court decided *Dimaya*. Vargas-Soto quickly moved for authorization to file a successive § 2255 motion. This time we granted his request. Vargas-Soto then filed the instant § 2255 motion on August 15, 2019.

The district court denied Vargas-Soto's § 2255 motion and his request for a certificate of appealability ("COA"). The court acknowledged that the sentencing judge relied on the now-unconstitutional residual clause, but the court still determined that § 16(a)'s definition of "crime of violence" (*i.e.*, the "elements clause") justified Vargas-Soto's sentence. According to the court, Vargas-Soto's manslaughter conviction met the elements clause because the offense had a "use of force" element, even though the manslaughter offense required only a *mens rea* of recklessness. The court also denied a COA because Vargas-Soto failed to show that "reasonable jurists would question" the ruling.

Soon after, Vargas-Soto sought a COA from us. Without explanation, a panel of our court granted that certificate. After the initial COA grant, the Supreme Court decided *Borden v. United States*, 141 S. Ct. 1817 (2021). There, the Court addressed the proper interpretation of ACCA's elements

No. 20-10705

clause, which has materially identical language to the INA's elements clause, and held that a criminal offense does not qualify "if it requires only a *mens rea* of recklessness." *Id.* at 1821–22 (plurality op.); *see also United States v. Gomez Gomez*, 23 F.4th 575 (5th Cir. 2022) (per curiam) (applying *Borden* to the INA's elements clause). Thereafter, a member of this court amended the COA to state:

> A certificate of appealability is granted on these two issues:
>
>> 1. Was Mr. Vargas's sentence enhanced under the unconstitutional residual clause found in 18 U.S.C. § 16(b)?
>>
>> 2. Is Mr. Vargas entitled to collateral relief under 28 U.S.C. § 2255?[2]

## II.

We begin with two jurisdictional questions. We first hold (A) Vargas-Soto's § 2255 motion is not barred by AEDPA's *res judicata* provision. Then we hold (B) Vargas-Soto's motion was properly authorized under § 2255(h)(2). We therefore have jurisdiction.

---

[2] It's not clear that the amended COA is valid. *See United States v. Castro*, 30 F.4th 240, 246 (5th Cir. 2022) (holding "that our court *can* raise COA defects sua sponte—just as it *can* raise numerous other defects in postconviction proceedings"). Under 28 U.S.C. § 2253(c)(2), we "may" grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." The COA then must "indicate which *specific* issue or issues satisfy the showing required by paragraph (2)." *Id.* § 2253(c)(3) (emphasis added). It's not clear that either of the two issues are "*specific*" enough to make "a substantial showing of the denial of a *constitutional* right." *Id.* § 2253(c)(2), (3) (emphases added). Because we conclude that Vargas-Soto procedurally defaulted his claim, we need not address this non-jurisdictional issue. *See Castro*, 30 F.4th at 247. But we hasten to underscore that further care is needed when proposing, drafting, and granting COAs.

A.

AEDPA has a strict *res judicata* provision. It bars—with no exceptions—any claim "that was presented in a prior application." 28 U.S.C. § 2244(b)(1). The Supreme Court has held that this bar is jurisdictional. *See Panetti v. Quarterman*, 551 U.S. 930, 942 (2007).

And this bar applies to § 2255 motions. Under § 2255(h), a movant must get authorization to file "[a] second or successive motion . . . *as provided in section 2244* by a panel of the appropriate court of appeals." (Emphasis added.) We've held that "this cross-reference incorporates § 2244(b)(1)'s strict relitigation bar into § 2255(h)'s scheme." *In re Bourgeois*, 902 F.3d 446, 447 (5th Cir. 2018); *cf. Avery v. United States*, 140 S. Ct. 1080, 1080 (2020) (Kavanaugh, J., statement respecting the denial of certiorari) (noting that the Second, Third, Seventh, Eighth, and Eleventh Circuits agree but that the Sixth Circuit recently disagreed). Thus, we must "dismiss[]" a "claim presented" in a "second" motion "that was presented in a prior" motion. 28 U.S.C. § 2244(b)(2).

To see why Vargas-Soto's claim is nevertheless not barred, consider what kind of claim Vargas-Soto asserts. He contends that his motion presents a "*Dimaya* claim." But we've recently held that there are no separate claims for *Johnson*, *Dimaya*, and *Davis*; rather, there's just one claim based on the same void-for-vagueness ground (hereinafter, "void-for-vagueness claim" or "vagueness claim"). *See United States v. Castro*, 30 F.4th 240, 247 (5th Cir. 2022) (concluding that a *Johnson* claim is the same as a *Davis* claim because they are "based on the same ground (void-for-vagueness)"). So Vargas-Soto presents a void-for-vagueness claim.

Vargas-Soto hasn't presented this claim in a motion before. The only other time he presented a void-for-vagueness claim was in a request for authorization to file a successive § 2255 motion shortly after *Johnson* and

*Welch*. But AEDPA clearly distinguishes a *request for authorization* to file a motion for relief from the *motion* itself. *Compare, e.g.*, 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."), *with id.* § 2244(b)(2) (barring a claim that's presented in a second filed "application"); *see also Beras v. Johnson*, 978 F.3d 246, 252 (5th Cir. 2020) (explaining that while state prisoners file "applications," federal prisoners file "motions"). Here, we denied Vargas-Soto's request for authorization to file his motion. That means he never actually filed the underlying motion. And it also means that AEDPA's absolute bar on previously presented claims is inapplicable.

## B.

Even for claims that have not been made in a prior motion, AEDPA eliminates federal jurisdiction over second-or-successive motions, unless they are first authorized by the court of appeals to "meet the strict procedural requirements" of 28 U.S.C. § 2255(h). *See United States v. Wiese*, 896 F.3d 720, 723–24 (5th Cir. 2018). Pursuant to those strict procedural requirements, we must make certain conclusions before authorizing a second-or-successive motion. As relevant here, § 2255(h)(2) requires us to conclude that Vargas-Soto's underlying claim relies on "[1] a new rule of constitutional law, [2] made retroactive to cases on collateral review by the Supreme Court, that [3] was previously unavailable." We consider each requirement in turn.

### 1.

Vargas-Soto first must show that *Dimaya* announced a new rule of constitutional law. He does.

No. 20-10705

"A rule is new unless it was *dictated* by precedent existing at the time the defendant's conviction became final." *Edwards v. Vannoy*, 141 S. Ct. 1547, 1555 (2021) (quotation omitted). "In other words, a rule is new unless, at the time the conviction became final, the rule was already apparent to all reasonable jurists." *Ibid.* (quotation omitted).

*Dimaya* was not dictated by precedent when Vargas-Soto's conviction became final. After *Johnson*, our *en banc* court concluded that the INA's residual clause was not unconstitutionally vague. *See United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc). *Dimaya* abrogated this decision. And it did so over a four-justice dissent. *See* 138 S. Ct. at 1234–41 (Roberts, C.J., dissenting); *see also id.* at 1242–59 (Thomas, J., dissenting). Therefore, we conclude that the rule adopted in *Dimaya* was open to reasonable debate and not "dictated by" *Johnson*.

Moreover, Supreme Court precedent instructs us to focus on when "the defendant's conviction became final" to determine whether a rule is new. *Edwards*, 141 S. Ct. at 1555; *see also, e.g.*, *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997). Vargas-Soto's conviction became final in 2013. At that point, neither *Johnson* nor *Dimaya* had been decided. If *Dimaya* wasn't dictated by precedent after *Johnson*, it certainly wasn't when Vargas-Soto's conviction became final. *Cf. Welch*, 578 U.S. at 129 ("It is undisputed that *Johnson* announced a new rule."). In short, *Dimaya* announced a new rule of constitutional law.

2.

Vargas-Soto next must show that the Supreme Court has made *Dimaya* retroactive to cases (like his) on collateral review. This time Vargas-Soto technically cannot make that showing, but precedent requires us to agree with him anyway.

9

In *Tyler v. Cain*, 533 U.S. 656 (2001), the Supreme Court explained two ways that it can make a new rule of constitutional law retroactive under § 2255(h)(2).[3] First, the Supreme Court itself can expressly hold that a new rule is retroactive on collateral review. *Id.* at 662–64. Or second, the Supreme Court's holdings in "[m]ultiple cases can render a new rule retroactive" but "only if the holdings in those cases necessarily dictate retroactivity of the new rule." *Id.* at 666. We cannot infer that the Supreme Court has made something retroactive "when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts." *Id.* at 663.

The Supreme Court has not expressly made *Dimaya* retroactive. As we previously held: "*Dimaya* did not address whether its holding might apply retroactively on collateral review." *Pisciotta v. Harmon*, 748 F. App'x 634, 635 (5th Cir. 2019) (per curiam). We've reached the same conclusion in considering whether the Court made *Davis* retroactive, and for retroactivity under § 2255(h)(2), "[t]here is no principled distinction between *Dimaya* and *Davis*." *In re Hall*, 979 F.3d 339, 346 (5th Cir. 2020).

Thus, *Dimaya* can be retroactive only if the holdings of multiple Supreme Court cases "necessarily dictate retroactivity." *Tyler*, 533 U.S. at 666. And to show that, Vargas-Soto must rely on *Schriro*, *Johnson*, *Welch*, and *Dimaya*. *Schriro* held that new substantive rules generally apply retroactively. *Johnson* held that the term "violent felony" in ACCA was void. *Welch* held that *Johnson* declared a new rule of constitutional law that is retroactive because it changed the substantive reach of the relevant statute. *Dimaya* extended the right initially recognized in *Johnson* and held that the term "crime of violence" in the INA was unconstitutionally vague, changing its

---

[3] In *Tyler*, the Supreme Court addressed a state prisoner's § 2244(b)(2)(A) application. But the retroactivity language in that provision is materially identical to that in § 2255(h)(2), which applies to federal prisoners.

substantive reach. The combined holdings of *Schriro*, *Johnson*, *Welch*, and *Dimaya* thus "necessarily dictate retroactivity." *Tyler*, 533 U.S. at 666; *but cf. Hall*, 979 F.3d at 347 ("A reasonable jurist could easily read *Welch* and conclude that *Davis*'s retroactivity logically follows. But that is different from saying that *Welch* necessarily dictates that outcome.").

That's obviously quite a fruit salad of precedent. And a lot hinges on whether we're correctly inferring the Supreme Court's meaning from four different cases spanning multiple decades. *Cf. In re Harris*, 988 F.3d 239, 241 (5th Cir. 2021) (Oldham, J., concurring) ("If it were up to me, I'd wait until the Supreme Court itself made *Davis* retroactive, as § 2255(h)(2) requires. But at this point, we have numerous Fifth Circuit panels that have authorized successive motions under § 2255(h)(2) to raise *Davis* claims."). But under our precedent, we're constrained to hold that the Supreme Court has made *Dimaya* retroactive.

3.

Vargas-Soto last must show that *Dimaya*'s new and retroactive rule was previously unavailable. Again, he does.

"To satisfy this requirement, the new constitutional rule [Vargas-Soto] puts forth must not have been available to him when he brought his last federal proceeding—including an authorization motion—challenging his conviction." *In re Thomas*, 988 F.3d 783, 790 (4th Cir. 2021). Vargas-Soto's last proceeding before the instant § 2255 motion was a request for authorization to file a successive § 2255 motion after *Johnson* and *Welch* but before *Dimaya*. Because *Dimaya* announced a new rule even after *Johnson*, the claim was previously unavailable to Vargas-Soto.

Vargas-Soto's motion thus passes § 2255(h)(2). We have jurisdiction.

No. 20-10705

III.

Our first merits question is whether Vargas-Soto's § 2255 motion is time-barred. We can raise this question *sua sponte*. *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

Section 2255(f) says a one-year limitations period "applies to 'all motions' under § 2255, initial motions as well as second or successive ones." *Dodd v. United States*, 545 U.S. 353, 359 (2005). The limitations period "run[s] from the latest of" four dates. 28 U.S.C. § 2255(f). Here, the relevant trigger for starting the limitations period is "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3). We call this "the (f)(3) trigger" and ask when the Court "initially recognized" "the right asserted" in Vargas-Soto's § 2255 motion.

We hold (A) the Supreme Court initially recognized that right in *Johnson*. Then we explain (B) why *Dimaya* didn't reset the (f)(3) trigger. We last hold (C) Vargas-Soto's § 2255 motion is nonetheless timely.

A.

We start with "the right asserted" in Vargas-Soto's § 2255 motion. This inquiry immediately presents a level-of-generality problem. At a high level of generality, the right asserted by Vargas-Soto is the right to fair notice of the law. The initial recognition of that right dates back to before the Founding. *See, e.g.*, Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989) (discussing Nero's practice of posting laws high on pillars so that they would be harder to read and easier to break). At a much more granular level, "the right asserted" by Vargas-Soto's motion was recognized in *Dimaya*. That decision, after all, is where the Court held unconstitutional the INA provision under which Vargas-Soto was sentenced.

12

So the initial recognition of his asserted right—and hence the beginning of his limitations period—is somewhere between 50 A.D. (Nero) and 2018 (*Dimaya*).

To pick the appropriate level of generality, we return to the statutory text. The (f)(3) trigger restarts a prisoner's limitations period on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). This text "unequivocally identifies one, and only one, date [for the (f)(3) trigger]: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Dodd*, 545 U.S. at 357 (quoting the (f)(3) trigger). Then the text specifies two conditions, both of which must obtain to pull the (f)(3) trigger: (a) the Court must've newly recognized the asserted right, and (b) the Court must've made it retroactively applicable to cases on collateral review.

The upshot of this text, the Court has acknowledged, can be "harsh" and "difficult" for prisoners. *Id.* at 359. That's because the (f)(3) trigger can be pulled—and the one-year clock can be running—but the prisoner won't know it until both the (a) and (b) conditions are met. Think about it like a leaky roof. The roof can start leaking on Day X. But the homeowner won't actually know it until some later Day Y after two conditions are met—when (a) the homeowner goes into the attic and (b) finds a puddle of water. This can generate harsh and difficult results for the homeowner because the leak started on Day X, no matter that the homeowner discovered it on some later Day Y.

The (f)(3) trigger works exactly the same way. The Court initially recognizes a right on Day X. That immediately starts a one-year limitations period for all prisoners who want the benefit of the (f)(3) trigger, even if

(a) the Court has not yet clarified that the right is a newly recognized one, and (b) the Court has not yet made it retroactive. The (f)(3) clock is running all the same. *See Dodd*, 545 U.S. at 359. Perhaps Day Y—that is, a hypothetical later date on which the Court clarifies that the right is (a) newly recognized and (b) retroactive—rolls around 364 days after Day X. Or perhaps Day Y is 700 days after Day X. Again, it doesn't matter. Day X is and always will be the operative date for when the (f)(3) trigger starts a new limitations period.

So, how does all this apply to Vargas-Soto? He asserts the right not to be sentenced on the basis of an unconstitutionally vague residual clause. The Court initially recognized that right in *Johnson*, on June 26, 2015. That is Day X and hence the (f)(3) trigger for Vargas-Soto. It's true that no one—including Vargas-Soto—could've known that the (f)(3) trigger had been pulled and that the limitations period was running on Day X. Vargas-Soto could not have known that until the much later Day Y—when the Court specified (a) that it newly recognized the right in *Johnson* and (b) made it retroactive to cases on collateral review. The Court did (a) in several cases. *See, e.g.*, *Beckles*, 137 S. Ct. at 892 (explaining *Johnson* recognized that "the Due Process Clause prohibits the Government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement" (quotation omitted)). And as discussed above in Part II.B, the Court did not make the *Johnson* right retroactive to prisoners like Vargas-Soto until it decided *Dimaya* on April 17, 2018. Thus, Day Y (the day when both conditions were met) was 1,026 days after Day X (the day the Court initially recognized the asserted right). But that does nothing to change the operative date for the (f)(3) trigger. The Court pulled it—and hence started Vargas-Soto's limitations period—when it decided *Johnson* on Day X: June 26, 2015.

B.

It's wrong to suggest that *Dimaya* reset the (f)(3) trigger. As explained above, *Dimaya* was the last case in the string of precedents that made *Johnson* applicable to Vargas-Soto's sentence. But the (f)(3) trigger is not pulled by the *last* case in the string; it's pulled by the *first* one. That is, (f)(3) starts the limitations period when the Supreme Court initially recognizes the right—as it did in *Johnson*. To hold otherwise would squarely contravene the Court's opinion in *Dodd*.

Neither *United States v. Morgan*, 845 F.3d 664 (5th Cir. 2017), nor *United States v. London*, 937 F.3d 502 (5th Cir. 2019), is to the contrary. Both opinions have stray sentences that, wrenched from context, might be read to conflate the (f)(3) trigger with the "new rule" requirement in § 2255(h)(2). But it's never a fair reading of precedent to take such sentences out of context. *See Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022) ("This Court has long stressed that the language of an opinion is not always to be parsed as though we were dealing with the language of a statute." (quotation omitted)). And that's especially so where the out-of-context reading would directly contravene the Supreme Court's binding precedent in *Dodd*. The better reading of our cases is that, in accordance with *Dodd* (and the plain and ordinary meaning of § 2255), the (f)(3) trigger starts the limitations period when the Court initially recognizes a right.

Take *Morgan*. There, the movant argued that the Supreme Court initially recognized a right in *Descamps v. United States*, 570 U.S. 254 (2013). Rather than analyze the text of the (f)(3) trigger, we focused on whether *Descamps* established a "new rule" under § 2255(h)(2). We held it did not and therefore Morgan's claim was untimely. *See Morgan*, 845 F.3d at 668.

That makes perfect sense because a "new rule" is always a necessary but insufficient condition for the (f)(3) trigger. That is, the (f)(3) trigger

requires three things—an initially recognized right (on Day X) that satisfies conditions (a) and (b). The second condition (b), in turn, hinges on the retroactivity inquiry for "new rules." Thus, if (b) is not met, then the (f)(3) trigger is not pulled, and no new limitations period applies. *Morgan* therefore held that the prisoner could not get the benefit of the (f)(3) trigger because he could not satisfy one of its prerequisites—namely, the (b) condition.

Likewise in *London*. There, the prisoner wanted the benefit of the (f)(3) trigger based on the right initially recognized in *Johnson*. The problem, however, was that *Johnson* initially recognized the constitutional right to challenge a vague sentencing statute, and London wanted to extend that holding to the Sentencing Guidelines. *London*, 937 F.3d at 507–09. We held that extending *Johnson* to the Guidelines would require a new rule that the Supreme Court had not yet made, much less made retroactive to cases on collateral review. *See id.* at 507. Thus, as in *Morgan*, the (b) condition for the (f)(3) trigger was not met, and hence the prisoner could not get the benefit of the (f)(3) limitations period.

Neither *Morgan* nor *London* nor any other case in this circuit even suggests that a new rule (like *Dimaya*) is sufficient standing alone to trigger a new limitations period under (f)(3). And that's for good reason. If a new rule were sufficient to trigger a one-year limitations period under (f)(3), then Congress would have written (f)(3) the way it wrote (h)(2). *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2071 (2018) ("We usually presume differences in language like this convey differences in meaning." (quotation omitted)); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012) ("[A] material variation in terms suggests a variation in meaning."); *see also ibid.* ("And likewise, where the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."). The plain and ordinary meaning of the (f)(3)

No. 20-10705

trigger requires more than a new rule, so there's no basis in law or logic for an assertion that a new rule like *Dimaya* is sufficient to trigger a new (f)(3) limitations period.

C.

Because *Dimaya* does not trigger a new (f)(3) limitations period, Vargas-Soto is stuck with the one triggered by *Johnson*. The Court decided *Johnson* on June 26, 2015. Vargas-Soto requested authorization to file the instant § 2255 motion on August 15, 2018—more than three years after Day X (*i.e.*, the day the Supreme Court initially recognized the asserted right). So you might think that he's too late.

But he's not. That's because Vargas-Soto timely filed a request for authorization within one year of *Johnson*. Specifically, he requested authorization under § 2255(h)(2) on the very last day he had to satisfy the limitations period.[4] In that request for authorization, Vargas-Soto argued that his sentence should be vacated because the INA's residual clause was unconstitutionally vague—the same argument he obviously makes now. So Vargas-Soto did his part and satisfied AEDPA's limitations period.

We, on the other hand, fell short. On September 2, 2016, we denied Vargas-Soto's timely request for authorization. We apparently thought that *Johnson* and *Welch* provided no help to a prisoner, like Vargas-Soto, who was sentenced under the INA. But *Dimaya* makes clear that our 2016 denial was wrong. We therefore hold that Vargas-Soto timely filed—not because he filed

---

[4] A prisoner satisfies the limitations period when he files, in accordance with the prison mailbox rule, his request for authorization to file a second-or-successive § 2255 motion within one year of the (f)(3) trigger. *See In re Williams*, 759 F.3d 66, 68–69 (D.C. Cir. 2014) (Sentelle, J.). The limitations period under (f)(3) expired on June 26, 2016, but that was a Sunday. That gave Vargas-Soto an extra day, through June 27, under Federal Rule of Civil Procedure 6(a)(2)(C). Vargas-Soto filed his request on June 27.

No. 20-10705

within one year of *Dimaya*, but rather because he filed within one year of *Johnson*.

IV.

Next, we turn to procedural default. All agree that Vargas-Soto procedurally defaulted his void-for-vagueness claim. The only question is whether he can excuse that default. To do so, Vargas-Soto must show either (A) cause and prejudice or (B) actual innocence. *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019) (per curiam); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982) (procedural default applicable to § 2255 motions); *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001) (same). We hold that Vargas-Soto can't show either requirement.

A.

Start with cause. To establish it, the movant "must show that some objective factor external to the defense impeded counsel's efforts to comply with the [relevant] procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2065 (2017) (quotation omitted). "A factor is external to the defense if it cannot fairly be attributed to" the movant. *Ibid.* (quotation omitted). The Supreme Court has not provided "an exhaustive catalog of such objective impediments to compliance with a procedural rule," but "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials, made compliance impracticable, would constitute cause." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (quotation omitted). Vargas-Soto contends there was a legal impediment that prevented him from timely raising his vagueness claim on direct review—namely, that the Supreme Court had not yet held that his vagueness claim was a winner.

We first detail (1) when a movant may rely on a legal impediment to show cause. We then explain (2) nothing impeded Vargas-Soto from raising

18

No. 20-10705

his vagueness claim before *Johnson* or *Dimaya*. We last reject (3) Vargas-Soto's remaining counterarguments.

1.

The possibility that a legal impediment may qualify as cause originated in the pre-AEDPA case of *Reed v. Ross*, 468 U.S. 1 (1984). There, the Supreme Court "h[e]ld that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause." *Id.* at 16.

Later Supreme Court decisions have substantially limited that holding. Take *Smith v. Murray*, 477 U.S. 527 (1986). In that case, the Court emphasized that "perceived futility alone cannot constitute" a legal impediment. *Id.* at 535 (quotation omitted). That is, a prisoner can't fail to raise an argument at time X and then say at later time Y, "my argument would have been futile at time X, so I have cause for the default." Why? Because, the Supreme Court explained, if the prisoner had raised the argument at time X, "a state [or federal] court may [have] decide[d], upon reflection, that the contention [wa]s valid." *Ibid.* (quotation omitted). And it's that "very prospect" of a change in the law "that undergirds the rule" requiring prisoners to raise their claims *even when* they appear futile under then-current law. *Ibid.* The Court also limited *Reed* to establish merely this: "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Id.* at 537.

Also take *Bousley v. United States*, 523 U.S. 614 (1998). There, the Court reaffirmed that "where the basis of a claim is available, and other defense counsel have perceived and litigated that claim," the claim is not novel. *Id.* at 623 n.2 (quotation omitted). It similarly reaffirmed that "futility cannot constitute cause." *Id.* at 623 (quotation omitted).

19

Taken together, Supreme Court precedent holds that a prisoner cannot invoke "novelty" as cause for a default where he was legally able to make the putatively novel argument. We therefore agree with our sister circuits that a claim is not "novel" where a prisoner could (or where other prisoners did in fact) raise it at time X. *See Anderson v. Kelley*, 938 F.3d 949, 962 (8th Cir. 2019) ("[I]f the tools were available for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." (quotation omitted)); *Gatewood v. United States*, 979 F.3d 391, 395 (6th Cir. 2020) ("If another litigant pressed the claim, the tools required to conceive it must have existed."); *Granda v. United States*, 990 F.3d 1272, 1287 (11th Cir. 2021) ("[E]ven if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not lack the tools to construct their constitutional claim." (quotation omitted)).

2.

Vargas-Soto contends that he had cause for not raising his vagueness claim on direct appeal: He did not then have the benefit of *Johnson* and *Dimaya*. Those decisions were so pathbreaking, Vargas-Soto contends, that he could not reasonably have anticipated them and hence could not have preserved his vagueness claim without them. He might be right that *Johnson* and *Dimaya* were bolts from the blue. But Vargas-Soto is still wrong that their absence constituted cause. That's because, even without them, Vargas-Soto undisputedly had the tools for timely raising his vagueness claim. That's for three reasons.

First, the Supreme Court has recognized that criminal statutes are subject to vagueness challenges since at least 1954. *See United States v. Harriss*, 347 U.S. 612, 617 (1954). And the Supreme Court has recognized

vagueness challenges to sentencing provisions since at least 1979. *See United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute."). These decisions show that Vargas-Soto had the tools he needed to raise a vagueness challenge between 2011 (when he was convicted) and 2013 (when his conviction became final on direct appeal).

Second, other defendants were raising such claims before Vargas-Soto ever set foot in federal court. We've previously held that other defendants' claims suffice to show that a claim was not "novel." *See Bates v. Blackburn*, 805 F.2d 569, 576–77 (5th Cir. 1986). The fact that the Federal Public Defender for the Western District of Texas had squarely attacked the INA's residual clause as unconstitutionally vague three years before Vargas-Soto's sentencing further establishes that this claim was not novel. *See United States v. Nevarez-Puentes*, 278 F. App'x 429, 430 (5th Cir. 2008) (per curiam).

Third, other defendants were raising vagueness challenges to other similarly worded statutes before Vargas-Soto's sentencing. For example, the Supreme Court decided *James* in 2007. There, Justice Scalia argued at length that ACCA's materially identical residual clause was unconstitutionally vague. 550 U.S. at 214–31 (Scalia, J., dissenting). And in June 2011, the Court decided *Sykes*, where the majority rejected the argument that the residual clause was unconstitutionally vague and where Justice Scalia expanded his void-for-vagueness argument. *See* 564 U.S. at 15–16 (majority op.); *id.* at 28–35 (Scalia, J., dissenting). These decisions provided Vargas-Soto the tools needed to raise his vagueness claim.

Our sister circuits reinforce this conclusion. They've rejected the idea that prisoners always had cause for defaulting their vagueness claims before *Johnson* and *Davis*. *See, e.g.*, *Granda*, 990 F.3d at 1285–88 (*Davis*); *Herron v.*

No. 20-10705

*United States*, No. 21-10212, 2022 WL 987423, at *2–3 (11th Cir. Apr. 1, 2022) (per curiam) (*Davis*); *Gatewood*, 979 F.3d at 394–98 (*Johnson*). We see no reason to treat Vargas-Soto's claim differently.

3.

The crux of Vargas-Soto's counterargument is that we must rigidly apply *Reed v. Ross*. But that decision does nothing to help Vargas-Soto in light of (a) AEDPA, (b) precedent, and (c) practice.

a.

Start with AEDPA. That landmark statute tells us when a prisoner can invoke a novel precedent to seek postconviction relief. It says that a prisoner can file a second or successive request for relief when he can point to "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). That statutory text, in turn, evokes the new-rule-retroactivity paradigm of *Teague v. Lane*, 489 U.S. 288 (1989). Generally, Supreme Court decisions are not retroactive under *Teague* and § 2255(h)(2). *See, e.g.*, *Edwards*, 141 S. Ct. at 1555 ("[T]he Court has repeatedly stated that new rules of criminal procedure ordinarily do not apply retroactively on federal collateral review."). Thus, under AEDPA and *Teague*, new or novel legal rules generally do *not* help prisoners file new requests for postconviction relief.

*Reed v. Ross* predates AEDPA and *Teague* and says the opposite. That decision posits three circumstances in which a postconviction litigant might invoke a "novel" Supreme Court decision: the Supreme Court explicitly overrules one of its precedents; the Supreme Court overturns a longstanding and widespread practice that enjoyed widespread approval in the inferior courts; and the Supreme Court disapproves a practice that it arguably sanctioned in prior cases. 468 U.S. at 17–18. All sorts of Supreme Court

decisions do these things. In fact, it's difficult to imagine how a prisoner could win a case in the Supreme Court and not satisfy at least one of the *Reed* categories for "novelty." Thus, under Vargas-Soto's expansive reading of *Reed v. Ross*, new or novel legal rules generally *do* apply retroactively and help prisoners file new requests for postconviction relief. *See id.* at 17 (framing its holding in terms of "retroactiv[ity]"). That is tough to square with *Teague* and Congress's post-*Reed* decision in AEDPA to limit the retroactive application of novel legal rules.

Vargas-Soto's understanding of *Reed v. Ross* also would generate highly anomalous results for *state* prisoners subject to AEDPA. (Recall that Ross himself was a state prisoner, and *Reed*'s holding purports to apply equally to both state and federal prisoners who default their claims.) After AEDPA, the state prisoner who raises a claim and loses it will confront the formidable task of overcoming the relitigation bar, 28 U.S.C. § 2254(d), whereas the state prisoner who defaults the claim can later invoke *Reed* to capitalize on a third prisoner's success in litigating (and winning) it. That makes the sandbagging state prisoner substantially better off than the diligent one. *But see Lucio v. Lumpkin*, 987 F.3d 451, 474–76 (5th Cir. 2021) (en banc) (plurality op.) (emphasizing AEDPA's anti-sandbagging principle). And it contravenes Congress's judgment that prisoners cannot attack state court decisions using new rules of constitutional law that the state courts could not have foreseen. *See, e.g.*, *Greene v. Fisher*, 565 U.S. 34, 38–41 (2011) (holding later-decided Supreme Court decisions cannot constitute "clearly established law" under § 2254(d), and that state court decisions instead must be reviewed only under precedent that existed at the time).

No. 20-10705

AEDPA—no less than other rules governing postconviction litigation[5]—thus reflects the modern rule that new or novel legal decisions generally cannot be used to win postconviction relief. As the Supreme Court recently reminded us, the whole point of AEDPA is to "make[] winning habeas relief more difficult." *Davenport*, 142 S. Ct. at 1526; *see also Shinn v. Ramirez*, --- S. Ct. ---, --- (2022) ("[G]iven our frequent recognition that AEDPA limited rather than expanded the availability of habeas relief[,] it is implausible that, without saying so, Congress intended this Court to liberalize the availability of habeas relief generally, or access to federal factfinding specifically." (quotation omitted)).[6] Vargas-Soto therefore cannot invoke *Reed* to make the task easier.

---

[5] Consider the well-settled rule that the cause-and-prejudice standard "imposes a significantly higher hurdle than the plain error standard that governs direct appeals." *United States v. Reece*, 938 F.3d 630, 634 n.3 (5th Cir. 2019) (quotation omitted); *see also Brannigan v. United States*, 249 F.3d 584, 587 (7th Cir. 2001) (explaining that establishing cause and prejudice "is more difficult than establishing 'plain error'" (quoting *Frady*, 456 U.S. at 164)). And futility is not an excuse in the plain-error context. *See Greer v. United States*, 141 S. Ct. 2090, 2099 (2021) (A "futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in [Supreme Court] precedents. . . . Rule 51's focus on a party's *opportunity* to object—rather than a party's likelihood of *prevailing* on the objection—also undercuts Gary's proposed futility exception."). Thus, Vargas-Soto would have us hold that futility can establish cause for a default (the purportedly higher standard) but cannot establish plain error (the purportedly lower standard). That's obviously backwards.

[6] *Brown v. Davenport* and *Shinn v. Ramirez* each involved a state prisoner collaterally attacking his sentence in a federal habeas petition under the strictures of 28 U.S.C. § 2254, as amended by AEDPA. Vargas-Soto is obviously a federal prisoner, and his § 2255 motion is not strictly speaking a habeas petition. *See United States v. Cardenas*, 13 F.4th 380, 384 n.* (5th Cir. 2021) ("Section 2255 is a statutory *substitute* for habeas corpus." (citing *United States v. Hayman*, 342 U.S. 205, 219 (1952))). We nonetheless hold that AEDPA amended § 2255, no less than it amended § 2254, to make winning postconviction relief more difficult. There is nothing remarkable about that. *See Frady*, 456 U.S. at 164–68 (applying procedural default in the § 2255 context and concluding that there

b.

Next, precedent. The first two *Reed* categories—the ones Vargas-Soto relies on—were dicta. *See Reed*, 468 U.S. at 17 (listing the first two categories of novelty as (1) a Supreme Court decision that overturns a Supreme Court precedent and (2) a Supreme Court decision that overturns a widespread lower-court practice); *id.* at 18 ("This case is covered by the third category."). The Supreme Court has never relied on the first two categories to find cause and hasn't found cause based on the third category since *Reed*. The first two categories thus have "no binding force." *Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019) (Thapar, J.); *see also Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) ("Dictum is not law."); BRYAN A. GARNER, ET AL., THE LAW OF JUDICIAL PRECEDENT 44 (2016) (explaining that dictum does not "bind future courts" and is "not law per se").

Plus, we must read *Reed* in light of later Supreme Court precedent. *Bousley* and *Murray* squarely held that futile claims are not novel. These holdings unraveled *Reed*'s first two categories because their entire premise is futility. *Bousley* also narrowed *Reed* by replacing the tri-category framework with a single question of whether the "claim is so novel that its legal basis is not reasonably available to counsel." 523 U.S. at 622. So the best understanding of *Reed* is the one the Court itself adopted in narrowing it. It is thus unsurprising that our sister circuits understand *Bousley* and *Murray* to have quashed *Reed*'s novelty categories. *See, e.g.*, *Gatewood*, 979 F.3d at 395 ("Subsequent case law, however, has limited the breadth of *Reed*'s holding."); *Daniels v. United States*, 254 F.3d 1180, 1191 (10th Cir. 2001) (en

---

is "no basis for affording federal prisoners a preferred status when they seek postconviction relief").

banc) (explaining that the Court later "narrowed the broad *Reed* 'novelty' test in *Bousley*"); *Simpson v. Matesanz*, 175 F.3d 200, 212 (1st Cir. 1999) (questioning whether "the familiar *Reed* unavailability standard is still good law" after *Bousley*).

Contrary to Vargas-Soto's suggestion, *Bousley* isn't cabined to statutory matters. It was *Reed* (not *Bousley*) that cabined itself to the specific situation before it. *See Reed*, 468 U.S. at 17 ("Although the question whether an attorney has a reasonable basis upon which to develop a legal theory may arise in a variety of contexts, we confine our attention to the specific situation presented here: one in which this Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application." (quotation omitted)). Plus, *Bousley* announced its futility rule as a holding and without qualification, while *Reed*'s categories were both dicta and qualified. *See United States v. Pollard*, 20 F.4th 1252, 1261 (9th Cir. 2021) (Nelson, J., concurring) ("*Bousley* was decided after *Reed*, and *Bousley*'s futility rule was dispositive rather than dicta. *Bousley* made no exception for claims that received consistent negative treatment in the courts.").

c.

Last, practice. Defense counsel "routinely raise arguments to preserve them for further review despite binding authority to the contrary." *United States v. Scruggs*, 714 F.3d 258, 264 (5th Cir. 2013); *see also Pollard*, 20 F.4th at 1262 (Nelson, J., concurring) ("Competent defense counsel regularly preserve arguments for future appeal. Defense counsel are trusted with the great responsibility of using their discretion to bring the best arguments reasonably available."). This entire enterprise would be pointless if futility constituted cause. And it would create a system of litigation

No. 20-10705

freeriding, under which prisoners who do not make arguments get a free ride from those who do.

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998), illustrates the point. There, the Court held that a provision that "simply authorizes a court to increase the sentence for a recidivist" is a "penalty" and not a separate crime. *See id.* at 226–27. The consequence is that the Government doesn't have to submit to a jury a sentencing enhancement that turns on a defendant's prior criminal conviction. *See ibid.* A couple years later, the Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In that case, the Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. But the *Apprendi* Court maintained the significant exception announced in *Almendarez-Torres*, even though the majority acknowledged the decision was arguably wrong. As the *Apprendi* Court put it:

> Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence.

*Id.* at 489–90 (quotation omitted).

Today, *Almendarez-Torres* is still seriously questioned. *Compare Rangel-Reyes v. United States*, 547 U.S. 1200, 1200 (2006) (Thomas, J., dissenting from the denial of certiorari) (stating that "it has long been clear that a majority of this Court now rejects that exception"), *with ibid.* (statement of Stevens, J.) (explaining that although he "continue[s] to

believe that *Almendarez-Torres* . . . was wrongly decided, that is not a sufficient reason for revisiting the issue"). For this reason, we regularly get direct appeals seeking to preserve *Almendarez-Torres* challenges. *See, e.g.*, *United States v. Garza-De La Cruz*, 16 F.4th 1213 (5th Cir. 2021) (per curiam). "As a result, we routinely issue orders . . . summarily denying a claim on the ground that it is foreclosed by *Almendarez-Torres*." *Id.* at 1214 (concurring op.). And there's nothing wrong with "preserving one's rights just in case," especially when jurists recognize the potential claim and when it's well-established that failure to preserve the claim risks forfeiture of it. *Id.* at 1215.

The same was true with vagueness arguments between 2011 and 2013. The Supreme Court recognized potential vagueness challenges in the 1950s and even applied those vagueness principles to residual clauses in federal sentencing statutes in *James* (2007) and *Sykes* (2011). Here, as with *Almendarez-Torres*, parties should've "litigate[d] in anticipation of . . . legal change." *Garza-De La Cruz*, 16 F.4th at 1215 (concurring op.) (quotation omitted). Vargas-Soto's contrary understanding of cause would mean that we should treat prisoners who raise the challenge the same as those that don't. We reject that result.

B.

Finally, we turn to actual innocence. We hold (1) Supreme Court precedent forecloses Vargas-Soto's attempt to use actual innocence as an escape route for his procedural default. Then we reject (2) Vargas-Soto's reliance on our decision in *United States v. Reece*, 938 F.3d 630 (5th Cir. 2019).

1.

First, Supreme Court precedent. The Supreme Court has stressed that "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see also Sawyer v. Whitley*, 505 U.S.

333, 339 (1992). In other words, the movant must show, by the required level of convincingness, that "no reasonable juror would have convicted him" of the substantive offense. *Bousley*, 523 U.S. at 623 (quotation omitted).

The Supreme Court's decisions addressing actual innocence presuppose that the prisoner has new evidence that did not exist at the time of conviction and sentencing. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("*Without any new evidence of innocence*, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." (emphasis added)); *McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013) ("The miscarriage of justice exception, we underscore, applies to a *severely confined category*: cases in which *new evidence* shows it is more likely than not that no reasonable juror would have convicted the petitioner." (emphases added) (quotation omitted)).[7] And for good reason: If the prisoner does not present new evidence, then the prisoner either is asking courts to usurp the jury's function by considering the same evidence the jury did or is making purely legal arguments.

Here, Vargas-Soto does not argue factual innocence of the substantive crime—*i.e.*, illegal reentry under 8 U.S.C. § 1326(a). Instead, he argues that none of his prior convictions qualify for the sentencing enhancement for an "aggravated felony" under § 1326(b)(2). That argument is exclusively legal.

---

[7] *See also, e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. . . . If the petitioner asserts his actual innocence of the underlying crime, he must show it is more likely than not that no reasonable juror would have convicted him *in light of the new evidence presented in his habeas petition*." (emphasis added) (quotation omitted)); *House v. Bell*, 547 U.S. 518, 538 (2006) ("A petitioner's burden at the gateway stage is to demonstrate that more likely than not, *in light of the new evidence*, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." (emphasis added)).

And that's not good enough. To conclude otherwise "would mean that actual innocence amounts to little more than what is already required to show prejudice." *Sawyer*, 505 U.S. at 345 (quotation omitted). Vargas-Soto's failure to present new evidence confirms that he isn't asserting factual innocence but rather legal innocence.

### 2.

Vargas-Soto's main counterargument hinges not on Supreme Court precedent but rather on ours. Specifically, he says he can show actual innocence under *Reece*. But there are at least two problems with that.

First, *Reece* is best understood as merely accepting the Government's concession that the movant there was actually innocent, rather than deciding the actual-innocence issue. *See* 938 F.3d at 634 n.3 ("The government's brief recognizes as much."). In other words, *Reece* merely signaled what the proper result should be based on precedent but did not "consider and consciously decide" the actual-innocence issue. *Wright*, 939 F.3d at 704. "It would be at least imprudent, and maybe improper, to make binding precedent out of a court's simple acquiescence in the parties' concessions and assumptions." *Ibid.* Thus, "[o]ur hands are not tied in a later case just because, in an earlier one, a party conceded an issue and the panel took that concession at face value." *Ibid.*

Second, even if *Reece* decided actual innocence, the offense in *Reece* critically differs from the one here. In *Reece*, the movant was convicted of, among other things, using and carrying a firearm during a "crime of violence" under 18 U.S.C. § 924(c)(3). But the Supreme Court later held that § 924(c)(3)'s residual clause defining "crime of violence" was unconstitutionally vague. *See Davis*, 139 S. Ct. at 2336. In a footnote, we suggested that the movant established actual innocence of the substantive offense. *Reece*, 938 F.3d at 634 n.3. Specifically, we suggested that "if Reece's

convictions were based on the definition of [crime of violence] articulated in § 924(c)(3)(B), then he would be actually innocent of those *charges*" because his conviction required a "predicate" crime of violence. *Ibid.* (emphasis added). Put differently, Reece was actually innocent of the substantive offense charged because his *conviction*—not the particular length of his sentence—turned on the determination that he had committed a "crime of violence" under the void residual clause.

By contrast, Vargas-Soto was convicted of the substantive offense of illegal reentry as proscribed under 8 U.S.C. § 1326(a), and he does not challenge that conviction. Instead, he argues that he's actually innocent of his enhanced sentence under § 1326(b) for having a prior conviction for an "aggravated felony." But § 1326(b) "does not define a separate crime"; it's "a penalty provision, which simply authorizes a court to increase the sentence for a recidivist." *Almendarez-Torres*, 523 U.S. at 226. So Vargas-Soto does not claim *factual* innocence of his *conviction* (§ 1326(a)) but makes a *legal* argument that he doesn't qualify for the *sentencing enhancement* (§ 1326(b)). That's at best legal innocence—not factual innocence.

Our sister circuits confirm this conclusion. They've similarly concluded that factual innocence isn't established when a sentencing enhancement—rather than the substantive offense—is at issue. *See, e.g.*, *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) ("We thus decline to extend the actual innocence of sentence exception to claims of legal innocence of a predicate offense justifying an enhanced sentence."); *United States v. Pettiford*, 612 F.3d 270, 284 (4th Cir. 2010) ("Rather, he makes the legal argument that this conviction should not have been classified as a 'violent felony' under the ACCA. This argument . . . is not cognizable as a claim of actual innocence. . . . [A]ctual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal

classification of the predicate crimes." (quotation omitted)); *Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997) ("We conclude that a successive motion under 28 U.S.C. § 2255 . . . may not be filed on the basis of newly discovered evidence unless the motion challenges the conviction and not merely the sentence.").

*       *       *

Vargas-Soto failed to preserve his void-for-vagueness claim. So he procedurally defaulted it. And there's no persuasive reason to excuse that default. We therefore find no reversible error in the district court's judgment.

AFFIRMED.

No. 20-10705

W. Eugene Davis, *Circuit Judge*, dissenting:

I disagree with the majority that Vargas-Soto failed to show "cause" and "prejudice" that excuse his procedural default. When Vargas-Soto was sentenced in 2011, and during his direct appeal through 2013, the constitutional void-for-vagueness claim he now raises was foreclosed by the Supreme Court in *James v. United States*, a 2007 decision.[1] It was not until 2015 that the Supreme Court in *United States v. Johnson* overruled *James* and decided the constitutional issue favorably to Vargas-Soto.[2] Until the Court in *Johnson* overruled the contrary holding in *James*, the constitutional argument Vargas-Soto raises in his motion to vacate under 28 U.S.C. § 2255 was "novel." While *James* remained effective, Vargas-Soto's claim was not "reasonably available."

Vargas-Soto therefore has cause for his failure to raise the issue in his underlying proceedings. Because Vargas-Soto has obviously suffered prejudice,[3] I would reach the merits of his claim and grant him relief under § 2255.[4] Therefore, I respectfully dissent.

---

[1] 550 U.S. 192, 210 n.6 (2007).

[2] 576 U.S. 591, 606 (2015).

[3] Vargas-Soto was sentenced to 15-years imprisonment under 8 U.S.C. § 1326(b)(2) based on his prior conviction for an "aggravated felony," namely manslaughter, a "crime of violence" under 18 U.S.C. § 16(b). *See* 8 U.S.C. § 1101(a)(43)(F). Without the application of § 1326(b)(2)'s sentencing enhancement, Vargas-Soto was subject to a maximum term of 10-years imprisonment under § 1326(b)(1). The Government does not dispute that a sentence exceeding the statutory maximum by five years qualifies as actual prejudice.

[4] The prior manslaughter conviction Vargas-Soto's enhanced sentence was based on does not qualify under § 16(a)'s elements clause under the Supreme Court's recent decision in *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (plurality opinion) (holding that that an offense involving "reckless conduct" does not satisfy the elements clause's definition of "an offense requiring 'the use of force against the person of another'"); *see*

No. 20-10705

## I.

A number of provisions in the federal criminal statutes provide for a sentencing enhancement based on a defendant's prior conviction for, e.g., a "crime of violence."[5] One way for a crime to fall within this definition is to meet the terms of the statutes' substantially identical "residual clauses."[6] For years, including in Vargas-Soto's case, courts enhanced sentences by applying the residual clauses without question.[7] Notably, before Vargas-Soto's sentencing and direct appeal in 2011, the Supreme Court expressly held in *James* that one of these residual clauses, 18 U.S.C. § 924(e)(2)(B) in the Armed Career Criminal Act ("ACCA"), did not raise a constitutional void-for-vagueness problem.[8]

However, in 2015, in *Johnson*, the Court overruled *James* and recognized that a residual clause is void-for-vagueness and constitutionally infirm when it (1) "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements," and (2) "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony."[9] The major dispute in this case is whether the void-for-vagueness argument was "novel" at the time of Vargas-Soto's procedural default. The novelty inquiry turns on whether the "legal basis" for Vargas-Soto's claim—that, under *Johnson* and its progeny, 18 U.S.C. § 16(b) is void-

---

*also id.* at 1835 (Thomas, J., concurring) ("A crime that can be committed through mere recklessness does not have as an element the 'use of physical force.'").

[5] 18 U.S.C. § 16.

[6] *Id.* § 16(b).

[7] *See United States v. Vargas-Soto*, 700 F.3d 180, 182–84 (5th Cir. 2012).

[8] 550 U.S. at 210 n.6.

[9] 576 U.S. at 597–98.

for-vagueness—was "***reasonably*** available."[10] If it was not, then Vargas-Soto has established cause for his procedural default.[11]

## A.

We have clear direction from the Supreme Court on what "novelty" means in this context. In *Reed v. Ross*, the Court held, for the first time, that cause for a procedural default exists when the defaulted claim is "novel."[12] The Court described three non-exhaustive situations in which a constitutional claim is sufficiently novel:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.[13]

Because *Johnson* expressly overruled *James*,[14] the first category squarely fits this case, and we need look no further for a definition of novelty.

Contrary to the majority's conclusion, every circuit court, seven total, to consider whether *Johnson* is sufficiently novel to establish cause have held, under *Reed*, that it is. The First, Sixth, Seventh, and Tenth Circuits have

---

[10] *Bousley v. United States*, 523 U.S. 614, 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) (emphasis added).

[11] *Id.*

[12] 468 U.S. at 16.

[13] *Id.* at 17.

[14] 576 U.S. at 606.

issued precedential opinions on the issue.[15] The Fourth, Ninth, and Eleventh Circuits have each decided the issue in non-precedential opinions.[16]

The lone outlier is the Eleventh Circuit's opinion in *Granda v. United States*.[17] But that court relied on the fact that the movant, Carlos Granda, challenged a sentencing enhancement under 18 U.S.C. § 924(c)(3)(B)'s residual clause (the clause discussed in *United States v. Davis*[18]), rather than 18 U.S.C. § 924(e)(2)(B)'s (the clause discussed in *Johnson*). Even so, the *Granda* court recognized the validity of *Reed*, but found the first category

---

[15] *See Lassend v. United States*, 898 F.3d 115, 122–23 (1st Cir. 2018) ("*Reed* stated that, where the Supreme Court explicitly overrules one of its own precedents, . . . the failure of a defendant's attorney to have pressed such a claim . . . is sufficiently excusable to satisfy the cause requirement. That is what happened here." (internal quotation marks, brackets, and citations omitted)); *Raines v. United States*, 898 F.3d 680, 687 (6th Cir. 2018) *and Gatewood v. United States*, 979 F.3d 391, 396 (6th Cir. 2020) (construing *Raines* as holding that *Johnson* was "actually futile," thereby satisfying *Reed*'s first category), *cert. denied*, 141 S. Ct. 2798 (2021); *Cross v. United States*, 892 F.3d 288, 296 (7th Cir. 2018) ("We join the Tenth Circuit in excusing, under *Reed's* first category, the petitioners' failure to challenge the residual clause prior to *Johnson*."); *United States v. Snyder*, 871 F.3d 1122, 1127–28 (10th Cir. 2017) ("We therefore conclude that the *Johnson* claim was not reasonably available to Snyder at the time of his direct appeal, and that this is sufficient to establish cause.").

[16] *United States v. Bennerman*, 785 F. App'x 958, 963 (4th Cir. 2019) (concluding that the movant's *Johnson* argument was not procedurally defaulted because it "wasn't reasonably available before the change in law wrought by *Johnson*" and adopting the approach taken by the First, Seventh, and Tenth Circuits in, respectively, *Lassend*, *Cross*, and *Snyder*); *Ezell v. United States*, 743 F. App'x 784, 785 (9th Cir. 2018) ("Ezell had cause not to challenge because at that time, Supreme Court precedent foreclosed the argument that the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague." (footnote omitted)); *Rose v. United States*, 738 F. App'x 617, 626 (11th Cir. 2018) ("Under *Reed*, Mr. Rose has shown cause for failing to assert a vagueness challenge to the ACCA's residual clause on direct appeal.").

[17] 990 F.3d 1272 (11th Cir. 2021). The Eleventh Circuit followed *Granda* in another recent decision, *Herron v. United States*, No. 21-10212, 2022 WL 987423, at *2 (11th Cir. Apr. 1, 2022).

[18] 139 S. Ct. 2319 (2019).

inapplicable because, "[u]nlike the *Johnson* ACCA decision, *Davis* did not overrule any prior Supreme Court precedents holding that the § 924(c) clause was not unconstitutionally vague."[19] That overly formalistic distinction between "*Johnson* claims," which involve § 924(e)(2)(B), and "*Davis* claims," which involve § 924(c)(3)(B), is foreclosed by our precedent,[20] something the majority recognizes. When the Eleventh Circuit considered cause in the context of a *Johnson* claim, it held—in accord with every other circuit—that the claim was novel under *Reed*.[21]

*Reed*'s first category is plainly applicable and should resolve this case. The logic behind *Reed*, as seven circuit courts have recognized, remains sound: a claim is not "***reasonably*** available" when the Supreme Court bars it. When the Supreme Court forecloses a constitutional claim, every court in the nation, including the High Court, is bound to reject it. To say that such claims are "reasonably available" defies logic. I would join our sister circuits, and hold that, pre-*Johnson*, a void-for-vagueness challenge to a sentencing provision's residual clause was novel.

The majority avoids *Reed* by characterizing its first two categories of novel claims as mere dicta. According to the majority, *Reed*'s first two

---

[19] *Granda*, 990 F.3d at 1287.

[20] *See United States v. Castro*, 30 F.4th 240, 247 (5th Cir. 2022). The Supreme Court has also made clear that *Johnson*'s rule controls the analysis for each of the residual clauses, which are substantially identical. *Dimaya*, 138 S. Ct. at 1213-16 (noting that "*Johnson* is a straightforward decision [about § 924(e)(2)(B)'s residual clause] with equally straightforward application [to § 16(b)'s residual clause]" and holding that § 16(b) is unconstitutionally vague because it shares the same flaws as § 924(e)(2)(B)); *see also Davis*, 139 S. Ct. at 2326–27 (expanding *Johnson*'s application to § 924(c)(3)(B) because *Johnson* and *Dimaya* "teach that the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case,'" and because § 924(c)(3)(B) contains the same flaws as the other residual clauses).

[21] *Rose*, 738 F. App'x at 626.

categories have been rendered inapplicable based on (1) the Antiterrorism and Effective Death Penalty Act ("AEDPA"), (2) later precedent, and (3) practice. None of these arguments stand up to scrutiny.

1.

The majority's position that AEDPA somehow affects the "cause" standard for granting habeas relief is baffling. AEDPA provides the rule for the circumstances that may allow a prisoner to file a "second or successive" § 2255 motion to vacate.[22] The "second or successive" standard is independent from the common law procedural default doctrine.[23] If the majority suggests that the AEDPA standard for filing a successive motion also governs the "cause" standard for a procedural default, Vargas-Soto meets that standard. In *Welch v. United States*, the Court held that "*Johnson* is . . . a substantive decision and so has retroactive effect under *Teague [v. Lane]* in cases on collateral review."[24]

Neither the statute nor *Teague* suggests that this Court should not follow the *Reed* standard in determining what is a "new" or "novel" rule sufficient to establish cause for a procedural default. Regarding *Reed*'s first category—the most pertinent one in this case—the Supreme Court has continued to recognize that a rule is "new" when the Court overrules an

---

[22] 28 U.S.C. § 2255(h)(2).

[23] B. Means, Federal Habeas Manual § 9B:3 (2017) ("AEDPA did not change the application of pre-AEDPA procedural default principles."); *see also* Lee Kovarsky, *AEDPA Wrecks: Comity, Finality, and Federalism*, 82 Tul. L. Rev. 443, 450 (2007) ("[AEDPA] did little to alter existing [procedural] default doctrine.").

[24] 578 U.S. 120, 130 (2016). AEDPA allows a petitioner to file a successive § 2255 motion if it is based on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

earlier decision in announcing the rule.[25] In fact, the Court has stated that "[t]he starkest example of a decision announcing a new rule is a decision that overrules an earlier case."[26] And, that is consistent with *Reed*, where the Court used the term "new" interchangeably with the term "novel."[27]

2.

Next, the majority argues that precedent requires us to limit *Reed*. This argument is also confounding. The express holding in *Reed* was that cause for a procedural default exists when "a constitutional claim is so novel that its legal basis is not ***reasonably available*** to counsel."[28] The majority eviscerates that holding when it instead imposes the nigh-insurmountable requirement that "a prisoner cannot invoke 'novelty' as cause for a default where he was ***legally able*** to make the putatively novel argument." The majority's decision to dramatically increase the burden for establishing cause contradicts not only *Reed*, but also the later cases the majority relies on.

The majority points to two cases, *Smith v. Murray*[29] and *Bousley v. United States*.[30] In its view, these cases displace *Reed*'s novelty analysis and stand for the proposition that "futile claims are not novel." But the Supreme Court has never held that a finding of futility will preclude a finding of novelty. To the contrary, the Court has consistently treated the novelty issue

---

[25] *Edwards v. Vannoy*, 141 S. Ct. 1547, 1555 (2021) (citing *Whorton v. Bockting*, 549 U.S. 406, 416 (2007)).

[26] *Id.*

[27] 468 U.S. at 17.

[28] 468 U.S. at 16 (emphasis added).

[29] 477 U.S. 527 (1986).

[30] 523 U.S. at 622.

as a separate question from futility.[31] In *Murray*, the Court set forth the rule that "*perceived* futility *alone* cannot constitute cause."[32] And in *Bousley*, the Court held that "futility cannot constitute cause *if it means simply* that a claim was unacceptable to that *particular court* at that particular time."[33] Read in context, *Bousley* was referring to situations in which a claim is apparently futile because a lower court's precedent bars it.[34] The majority ignores these self-evident limits on the rule that, in general, futility is not enough to show cause.

Properly construed, *Murray* and *Bousley* reflect that a futile claim may be the basis for cause, as long as it is sufficiently novel. *Reed* remains the best guidance on how to define novelty, and neither *Murray* nor *Bousley* dealt with a situation in which the Supreme Court overturned its own precedent. Rather than imposing the majority's extraordinary legally-able-to-make standard,

---

[31] *Murray*, 477 U.S. at 535–36; *Bousley*, 523 U.S. at 622–23.

[32] 477 U.S. at 535 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 & n.36 (1982)) (emphasis added).

[33] 523 U.S. at 623 (emphasis added).

[34] The rule of law at issue in *Bousley* was that, to show "use" of a firearm under 18 U.S.C. § 924(c)(1), the Government must show "active employment of the firearm." 523 U.S. at 616 (quoting *Bailey v. United States*, 516 U.S. 137, 144 (1995)). Before *Bailey v. United States*, the Eighth Circuit—in which the petitioner's underlying proceedings took place—held that "use" included the mere "presence and availability" of a firearm in relation to a drug trafficking offense. *See, e.g.*, *United States v. Horne*, 4 F.3d 579, 587 (8th Cir. 1993). Thus, when his collateral attack reached the Supreme Court, the petitioner argued it would have been futile to raise these claims in the Eighth Circuit. *Bousley v. Brooks*, 1997 WL 728537 (U.S.), 32, 35 (U.S. Pet. Brief, 1997) ("His attorney's advice that it was futile to appeal from the guilty plea was correct, because Eighth Circuit case law was so well established.").

both *Murray* and *Bousley* reaffirm that cause exists "where a constitutional claim is so novel that its legal basis is not ***reasonably available*** to counsel."[35]

The Sixth Circuit in *Gatewood v. United States* discussed at length the distinction between *Reed* on one hand and *Murray* and *Bousley* on the other.[36] That court concluded that, under *Reed*, "'actual futility,' caused by the Supreme Court's ruling on an issue, can constitute cause."[37] However, under *Murray* and *Bousley*, "'futility cannot be cause' . . . where the source of the 'perceived futility' is adverse state or lower court precedent."[38] Applying *Reed*'s first category, the Sixth Circuit held that a claim under *Johnson* met the cause requirement, as long as the underlying proceedings occurred after the Supreme Court expressly precluded the void-for-vagueness argument in *James*.[39]

The fundamental fallacy to the majority's reasoning is its failure to recognize that a novel claim will almost always be futile. As the *Reed* Court stated:

> Just as it is reasonable to assume that a competent lawyer will fail to perceive the possibility of raising such a [novel] claim, it is also reasonable to assume that a court will similarly fail to appreciate the claim. It is in the nature of our legal system that legal concepts, including constitutional concepts, develop slowly, finding partial acceptance in some courts while meeting rejection in others. Despite the fact that a constitutional concept may ultimately enjoy general acceptance, . . . when the

---

[35] *Murray*, 477 U.S. at 536 (quoting *Reed*, 468 U.S. at 18) (emphasis added); *Bousley*, 523 U.S. at 622 (quoting *Reed*, 468 U.S. at 16) (emphasis added).

[36] 979 F.3d at 395–97.

[37] *Id.* at 396.

[38] *Id.*

[39] *Id.* at 397–98.

No. 20-10705

concept is in its embryonic stage, it will, by hypothesis, be rejected by most courts. Consequently, a rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose.[40]

The majority ignores this sound reasoning. Instead, it would require defendants to raise-or-waive every conceivable objection at sentencing and direct appeal, no matter how novel it may be.

3.

Finally, as further support for its position, the majority points to the fact that numerous criminal defendants continue to preserve claims foreclosed by the Supreme Court's decision in *Almendarez-Torres v. United States*.[41] If *Reed*'s first category remains good law, these defendants need not preserve their arguments, because in the eventuality that the Supreme Court overrules *Almendarez-Torres*, the claim will be sufficiently novel to show cause for their failure to raise it. The majority contends that we cannot "treat prisoners who raise the [*Almendarez-Torres*] challenge the same as those that don't."

This reasoning is deeply flawed. This Court has repeatedly admonished defendants and their counsel not to bring *Almendarez-Torres* claims on appeal. For example, in *United States v. Pineda-Arrellano*, we stated that "arguments seeking reconsideration of *Almendarez-Torres* will be viewed with skepticism."[42] We advised that "[i]t would be prudent for appellants

---

[40] *Reed*, 468 U.S. at 15.

[41] 523 U.S. 224 (1998).

[42] 492 F.3d 624, 626 (5th Cir. 2007).

and their counsel not to damage their credibility with this court by asserting non-debatable arguments."[43]

If the Supreme Court finally overturns *Almendarez-Torres*, the majority would treat those "prudent" defendants—who elected to follow this Court's instructions—as having procedurally defaulted their *Almendarez-Torres* claims.[44] Meanwhile, those imprudent few who chose to "damage their credibility" by raising their fruitless claims will be entitled to relief.[45] The majority thereby undermines principles of judicial efficiency and establishes a rule that will unjustly deprive litigants of their opportunity to challenge an unconstitutional sentence.

## II.

The majority opinion stands in direct contradiction to Supreme Court authority and unanimous circuit authority. In my view, Vargas-Soto has established cause for his procedural default and has demonstrated that he is entitled to § 2255 relief. The majority avoids this obvious result by obscuring or misreading applicable authority. It achieves an injustice in this case, and many future cases, despite clear Supreme Court guidance. Therefore, I respectfully dissent.

---

[43] *Id.*

[44] *Id.*

[45] *Id.*